HOVEY et al. v. ELLIOTT et al.

(Superior Court of New York City, General Term.    October 24, 1892.)

1. STATE COURTS—JURISDICTION—VALIDITY OF FOREIGN DECREE.

In an action on a decree entered by the supreme court of the District of Columbia, a court of New York may determine whether, under the laws of the United States, the court had power to enter such decree.

2. CONTEMPT—POWER OF COURT TO PUNISH FOR—STRIKING OUT ANSWER.

Since the authority of federal courts to punish for contempt is limited to the imposition of a fine or imprisonment, an order of the supreme court of the District of Columbia, striking defendants' answer "from the files for their contempt," and giving plaintiffs judgment by default for want of an answer, was without authority, and is void.

Appeal from judgment on report of referee.

Action by Charles E. Hovey and another against George Elliott and another. Defendants had judgment, and plaintiffs appeal. Affirmed.

Following is substantially the report of Daniel G. Rollins, referee:

"In June, 1873, there was pending before the mixed commission on British and American claims, then sitting at the city of Washington, in the District of Columbia, a certain claim in behalf of one Augustine R. McDonald. McDonald entered into a written agreement with the plaintiffs in this action, whereby, in consideration of services thereafter to be rendered by them in the prosecution of such claim, it was provided that they should receive a sum equal to twenty-five per centum of the amount that should be recovered,—' the payment of which sum,'

the agreement proceeds to say, 'is hereby made a lien upon the said claim, and upon any draft, money, or evidence of indebtedness which may be paid or issued thereon.' In September, 1873, the commission awarded to McDonald, in satisfaction of his claim, the sum of $197,000. In August, 1874, McDonald assigned the whole of this award to one William White. In the following October these plaintiffs filed in the supreme court of the District of Columbia a bill in equity against McDonald and White, alleging therein that McDonald was indebted to them, under the agreement aforesaid, in the sum of $49,297.50, and that they had a lien to the extent of such sum upon the award in his favor. The bill prayed, among other things, that the defendants, McDonald and White, be restrained from assigning or collecting more than three fourths of the amount of the award in McDonald's favor, and that a decree be entered establishing the complainants' lien upon the remaining one fourth. Such proceedings were thereafter had that one-half part of the sum so awarded was paid into court to meet the claim and lien of these plaintiffs. Of the funds thus deposited, George W. Riggs, a banker in Washington, D. C., was appointed receiver. As such receiver, pursuant to the direction of the court, he invested such funds in certain bonds of the District of Columbia, guarantied by the United States, and payable at its treasury. To the plaintiffs' bill the defendants interposed a demurrer, which was thereafter sustained. An amended complaint was met by a second demurrer, which was also sustained, and on June 24, 1875, a decree was entered dismissing the plaintiffs' bill, with costs. On the same day the plaintiffs entered an appeal from that decree to the general term of the supreme court of the District of Columbia. Four days later (that is, on June 28, 1875) another decree was entered, in precise conformity with the earlier one, except that its contents were supplemented by a direction to the receiver to pay to the defendants, McDonald and White, the funds in his hands belonging to the cause. Pursuant to such direction, and on the day of the entry of the decree wherein it was contained, the receiver delivered to McDonald the bonds in question, but not until he had first consulted the judge holding the court in which such decree had been entered, and been by him advised that that course was proper for him to pursue. McDonald on the same day sold and delivered the bonds to the banking firm of Riggs & Co., of which the receiver was a partner, obtaining upon such sale their then market value. The bonds were promptly taken by Riggs & Co. to the treasury of the United States, and were there surrendered. In their place there were issued to Riggs & Co. certain new bonds, which were thereafter, in the month of December, 1875, sold and delivered to various purchasers. On July 2, 1875, these plaintiffs took an appeal to the general term of the supreme court of the District of Columbia from the aforesaid decree of June 28, 1875. On March 4, 1876, that decree, as well as the earlier decree of June 24, 1875, was reversed, with costs. The cause was remanded to the special term, with leave to the defendants in the action to answer the complainants' bill. In May, 1876, McDonald and White interposed an answer, denying the validity of the complainants' claim. Upon the issues thus joined, testimony was taken at divers times during the years 1875 and 1876. In June, 1877, the complainants obtained an order from the supreme court of the District of Columbia, at general term, requiring the defendants, McDonald and White, to 'pay over to the registry of the court' the sum of $49,297.50, which had been paid them by the receiver. This order was disobeyed; and thereupon the complainants, in September, 1877, moved the defendants, McDonald and White, to show cause 'why they, and each of them, should not be punished for disobedience of the order as for a contempt.' On December 8, 1877, the supreme court of the District of Columbia made a decree at general term that 'the rule upon the defendants to show cause why they should not be decreed to be in, and punished as for, a contempt of court,' etc., ' be made absolute, and that the said McDonald and White be taken and deemed to be in contempt of the aforesaid order,' etc. Such decree further provided that ' unless McDonald and White, within six days from the entry of this order and the service of a copy thereof upon their solicitors, shall in all respects comply with the said order of June 19, 1877, and pay unto the said registry of this court the sum of $49,297.50, the answer filed by them in the cause be stricken out, and that this cause proceed as if no answer therein had been interposed, and that until the said defendants shall comply with the said order of June 19, 1877, all proceedings on the part of said defendants in this cause be, and the same are hereby, perpetually stayed.' On December 29, 1877, the supreme court of the District of Columbia, at general term, on motion of the complainants and proof of noncompliance on the part of the defendants, McDonald and White, with the requirements of the decree of December 8, 1877, 'ordered, adjudged, and decreed that the answer filed in this cause by the defendants, Mc-

Donald and White, be stricken out and removed from the files of the court, and that this cause do proceed as if no answer herein had been interposed.' On February 12, 1878, the supreme court of the District of Columbia, at general term, made decree as follows: 'The answer of defendants having been removed from the files for their contempt in refusing to obey the order of court and deposit in the registry the sum of $49,297.50, it is now ordered, adjudged, and decreed that the bill be taken pro confesso against them.' On April 17, 1878, that order was made absolute by another order or decree, which, after reciting material allegations in the complainants' bill as 'standing without denial on the part of the defendants,' ordered and adjudged 'that the complainants have a lien upon the claim of Augustine R. McDonald against the United States * * * of $197,190, and upon any draft, money, evidence of indebtedness, or proceeds thereof.' The present action was commenced on April 16, 1884, one day less than six years after the entry of the decree last above mentioned.

"It is claimed by the plaintiffs herein that Riggs & Co. were purchasers pendente lite of the bonds on which they (the plaintiffs) had a lien; that the evidence of that lien is conclusively established by the decree of the supreme court of the District of Columbia, and that their cause of action against the defendants accrued when that decree was entered, and at no earlier date. The defendants, on the other hand, claim— * * * fourth, that the supreme court of the District of Columbia exceeded its jurisdiction in making the aforesaid decree of April 17, 1878; that such decree is wholly void; and that, as it is the sole foundation of the plaintiffs' claim, the defendants are entitled to judgment. * * *

"Does the final decree of the supreme court of the District of Columbia, entered on the 17th day of April, 1878, furnish sufficient support for its judgment in favor of these plaintiffs? It is claimed in their behalf that their lien is conclusively established by such decree, and that, even if the supreme court of the District of Columbia was clearly in error in taking the steps which led up to the making of that decree, the error is one which can only be taken advantage of in a direct proceeding for its correction, and its existence must, in this collateral proceeding, be wholly disregarded. The testimony shows that the bill of complaint in the District of Columbia action alleged the execution of the aforesaid agreement between the plaintiffs and the defendants, and the rendering of the services called for by that agreement, so as to perfect the plaintiffs' lien. It further shows that in May, 1876, an answer was interposed by the defendants, McDonald and White, denying that the plaintiffs had rendered any services under said agreement, and alleging that the execution of that instrument had been obtained by fraud. It shows, too, that testimony had been taken in the action by both the plaintiffs and defendants, and that when the cause came upon the calendar at special term in April, 1877, it was certified to the general term, there to be heard in the first instance. I have already referred in detail to various proceedings in the supreme court of the District of Columbia between June, 1877, when McDonald and White were ordered to pay into the registry the sum of $49,297.50, and April, 1878, when, in disregard of the answer of McDonald and White and of the testimony that had been taken in their behalf, that court entered judgment in accordance with the prayer of the complainants. There was no adjudication, nor was there pretense of adjudication, upon the actual merits of the matters in controversy; for the court had theretofore stricken the defendants' answer from the files, and had avowedly and distinctly pursued that course by way of punishing the defendants for their contempt in refusing to obey the court's order for the deposit of moneys in its registry. Now, it is a well-settled doctrine of our federal jurisprudence that the United States courts have no common-law jurisdiction, but such jurisdiction only as has been conferred upon them by statute. The statutory authority for punishment for contempts in those tribunals is limited to the imposition of a fine or of imprisonment. Section 17, Judiciary Act 1789; Rev. St. U. S. § 725; section 34, Act Feb. 21, 1871; Anderson v. Dunn, 6 Wheat. 227; Ex parte Robinson, 19 Wall. 512. It seems clear that in pronouncing its decree of April 17, 1878, under the circumstances that I have already referred to, and after the striking of the defendants' answer from the files by way of punishment for their contempt, the supreme court of the District of Columbia transcended its authority. Is its decree, for that cause, void? McVeigh v. U. S., 11 Wall. 259, was decided upon the following state of facts: Certain property there in controversy had been seized by a United States marshal in 1863, and libeled for forfeiture, upon the allegation that its owner had held an office of honor under the Confederate government, and that he had in various ways given aid and comfort to the Rebellion. In response to the monition, which had cited all persons interested in the property, or claiming an interest, to appear and make their allegations in

that behalf, the owner had appeared, and had filed claim and answer. The district attorney thereafter moved that such claim, answer, and appearance be stricken from the files on the ground that the claimant, as his answer disclosed, was, at the time of filing the same, 'a resident within the city of Richmond, within the Confederate lines, and a rebel.' The motion of the district attorney was granted: a decree of condemnation of forfeiture was entered, and the property was sold. The decree was subsequently affirmed by the circuit court, and thereafter the case was taken by writ of error to the supreme court of the United States. Mr. Justice Swayne, delivering the unanimous opinion of that court, (11 Wall. 259,) said: 'In our judgment, the district court committed a serious error in ordering the claim and answer to be stricken from the files. As we are unanimous in this conclusion, our opinion will be confined to that subject. The order, in effect, denied the respondent a hearing. It is alleged that he was in the position of an alien enemy, and hence could have no locus standi in that forum. If assailed there, he could defend there. The liability and the right are inseparable. A different result would be a blot upon our jurisprudence and civilization. We cannot hesitate or doubt on the subject. It would be contrary to the first principles of the social compact, and of the right administration of justice.' At a later day the validity of the same decree was brought collaterally in question in the case of Windsor v. McVeigh, 93 U. S. 274, which was an action of ejectment. In delivering the opinion of the supreme court, Mr. Justice Field, after citing the language above quoted from the opinion of his associate justice, said: 'The principle stated in this terse language lies at the foundation of all well-ordered systems of jurisprudence. Wherever one is assailed in his person or his property, there he may defend; for the liability and the right are inseparable. This is a principle of natural justice, recognized as such by the common intelligence and conscience of all nations. A sentence of a court pronounced against a party without hearing him, or giving him an opportunity to be heard, is not a judicial determination of his rights, and is not entitled to respect in any other tribunal. Until notice is given, the court has no jurisdiction in any case to proceed to judgment, whatever its authority may be, by the law of its organization, over the subject-matter. But notice is only for the purpose of affording the party an opportunity of being heard upon the claim or charges made. It is a summons to him to appear and speak, if he has anything to say why the judgment sought should not be rendered. A denial to a party of the benefit of a notice would be, in effect, to deny that he is entitled to notice at all, and the sham and deceptive proceeding had better be omitted altogether. It would be like saying to a party, "Appear, and you shall be heard," and, when he has appeared, saying, "Your appearance shall not be recognized, and you shall not be heard." In the present case the district court not only, in effect, said this, but immediately added a decree of condemnation, reciting that the default of all persons had been duly entered. It is difficult to speak of a decree thus entered with moderation. It was in fact a mere arbitrary edict, clothed with the form of a judicial sentence. The law is, and has always been, that, whenever notice or citation is required, the party cited has a right to appear and to be heard; and when the latter is denied, the former is ineffectual for any purpose. The denial to a party in such a case of the right to appear is, in legal effect, a recall of the citation to him. * * * The position of the defendants' counsel is that, as the proceeding for the confiscation of the property was one in rem, the court, by seizure of the property, acquired jurisdiction to determine its liability to forfeiture, and consequently had a right to decide all questions subsequently arising in the progress of the cause, and that its decree, however erroneous, cannot, therefore, be collaterally assailed. * * * The doctrine invoked by counsel, that where a court has once acquired jurisdiction it has a right to decide every question which arises in a cause, and that its judgment, however erroneous, cannot be collaterally assailed, is undoubtedly correct, as a general proposition, but, like all general propositions, is subject to many qualifications in its application. * * * Though the court may possess jurisdiction of a cause, of the subject-matter, and of the parties, it is still limited in its modes of procedure, and in the extent and character of its judgments. It must act judicially in all things, and cannot then transcend the power conferred by law. If, for instance, the action be upon a money demand, the court, notwithstanding its complete jurisdiction over the subject and parties, has no power to pass judgment of imprisonment upon the defendant. If the action be for a libel or personal tort, the court cannot order in the case a specific performance of a contract. * * * The judgments mentioned, given in the cases supposed, would not be merely erroneous. They would be absolutely void, because the court, in rendering them, would transcend the limits of its

authority. * * * So a departure from established modes of procedure will often render a judgment void. Thus, the sentence of a person charged with felony, upon conviction by the court without the intervention of a jury, would be invalid for any purpose. * * * The doctrine stated by counsel is only correct when the court proceeds, after acquiring jurisdiction of the cause according to the established modes governing the class to which the case belongs, and does not transcend, in the extent and character of its judgment, the law which is applicable to it. *, * * It was not within the power of the jurisdiction of the district court to proceed with the case so as to affect the rights of the owner after his appearance had been stricken out, and the benefit of the citation to him thus denied; for jurisdiction is the right to hear and determine, not to determine without hearing.'

"Mr. Justice Woods, delivering the opinion of the supreme court of the United States in U. S. v. Walker, 109 U. S. 258, 3 Sup. Ct. Rep. 277, said: 'Although a court may have jurisdiction over the parties and the subject-matter, yet, if it makes a decree which is not within the powers granted to it by the law of its organization, its decree is void.' In the case just cited, the supreme court upheld a collateral attack upon a decree of the supreme court of the District of Columbia. That court was authorized to hold terms for the transaction of orphans' court business. It was proceeding with the settlement of the account of an administratrix of a decedent's estate. Over that account, and over the administratrix herself, the court had unquestioned jurisdiction. The decedent had been administrator of another estate, not fully administered at the time of his death. An administrator de bonis non of such other estate had been appointed, and the decree directed the accounting administratrix to pay over to such administrator de bonis non a certain sum of money. The supreme court of the United States held that the administratrix de bonis non was not entitled to recover from the accounting administratrix; that the supreme court of the District had exceeded its jurisdiction in making the order; and that the order was therefore void. This course was taken, not in a direct proceeding to review the decree, but in an action at law on the administrator's bond.

"Upon these authorities, and numerous others to which I have been referred by counsel, I hold that the validity of the decree of the supreme court of the District of Columbia may properly be inquired into in this action, and, upon careful consideration of all the evidence, I am of the opinion that such decree is invalid, for want of jurisdiction of the court wherein it was entered to enter the same; and, because of this invalidity, I find that the defendants herein are entitled to judgment."

Argued before FREEDMAN, DUGRO, and GILDERSLEEVE, JJ.

Thomas M. Wheeler and H. B. Titus, for appellants.

R. D. Harris, Wm. G. Choate, and John Seldon, for respondents.

PER CURIAM. Upon the case as now presented, the right of the plaintiffs to any relief whatever rests upon the alleged decree of the supreme court of the District of Columbia, entered on the 17th day of April, 1878. The referee found that the decree was invalid for want of jurisdiction of the court wherein it was entered to enter the same. The question of the validity or invalidity of the decree must be determined by the laws of the United States, and by the interpretation of those laws by the supreme court of the United States. Whether a decree of the same character, made under the same circumstances, by a court of the state of New York or of any other state, would or would not be valid, is an immaterial question, if, under the decisions of the supreme court of the United States, the decree was one which a federal court was wholly incompetent to make. Upon a careful examination of all that has been cited upon this point by both parties, we are of the opinion that the learned referee reached the right conclusion. The judgment should be affirmed, with costs, upon that part of the opinion of the referee which related to the question of jurisdiction.